1  ELIZABETH H. RADER (SBN 184963)
   SHAW PITTMAN LLP
2  1950 University Avenue
   East Palo Alto, CA 94303
3  Telephone:  (650) 833-4724
   Facsimile:  (650) 833-4701
4
   JAMES P. HARRISON (SBN 194979)
5  Attorney at Law
   980 9th Street, 16th Floor
6  Sacramento, CA 95814
   Telephone: (916) 492-9778
7
   *Attorneys for Plaintiff*
8  OPEN SOURCE YOGA UNITY

9
                **UNITED STATES DISTRICT COURT**
10
          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11
                   **SAN FRANCISCO DIVISION**
12

13                                      )
                                        )   **Case No.:  C 03-3182 PJH**
14  OPEN SOURCE YOGA UNITY,             )
    A California Corporation,           )
15                                      )   **OPEN SOURCE YOGA UNITY'S**
                             Plaintiff, )   **MOTION FOR PARTIAL**
16                                      )   **SUMMARY JUDGMENT ON**
                                        )   **CLAIM I – COPYRIGHT**
17          v.                          )   **(17 U.S.C. § 102)**
                                        )
18  BIKRAM CHOUDHURY,                   )   **Date:    January 19, 2005**
    An Individual, and DOES 1-20,       )   **Time:    9:00 a.m.**
19                                      )   **Judge:  Phyllis J. Hamilton**
                             Defendant. )   **Courtroom: 3**
20                                      )
                                        )
21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ..................................................................................... 3

    A.    The Bikram Basic Yoga System ............................................................... 3

    B.    Defendant's Registered Copyrights .......................................................... 4

        1.    Defendant's Six Textual Work Registrations ............................... 4

        2.    Rajashree Choudhury's Audiovisual Work Registration ............ 5

        3.    Defendant's Attempt to Register Copyright in the Yoga System Itself ...... 5

    C.    Defendant's Threats to Sue Teachers ........................................................ 6

III.   ARGUMENT .......................................................................................................... 7

    A.    Legal Standard ........................................................................................... 7

    B.    Defendant's Copyrights In Instructional Works Do Not Give Him Exclusive Rights To Teach The Ideas and Methods Described or Demonstrated In Those Works…………….. ................................................................................... 8

    C.    The Evidentiary Significance of Defendant's Copyright Registrations ............... 12

    D.    Copyright Does Not Cover Functional Works. ...................................... 13

    E.    The Bikram Basic Yoga System Lacks Sufficient Originality For Copyright ........................................................................................ 15

    F.    The Bikram Yoga System is Neither a Pantomime Nor a Choreographic Work .............................................................................. 17

        1.    The Bikram Yoga System is Not a Pantomime ......................... 18

        2.    The Bikram Yoga System is Not Choreography ....................... 19

    G.    Physical Fitness Exercises and Sports are Expressly Excluded From Protection under Copyright Law ............................................................ 20

    H.    Copyright Does Not Reward Mere "Sweat of the Brow" ...................... 22

IV.   CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Aliotti v. R. Dakin & Cu.*, 831 F.2d 898 (9th Cir. 1987) ................................................ 9

*Allan v. Academic Games League of Am.*, 89 F.3d 614 (9th Cir. 1996) ........................... 9

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997) ................. 8

*Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 61-1 F.2d 296 (9th Cir. 1979) .......... 21

*Apple Computer v. Microsoft Corp.*, 35 F.3d 1435(9th Cir. 1994) ................................. 10

*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992) ........................... 15, 17, 20

*AT&T Corp. v. Excel. Communs., Inc.*, 172 F.3d 1352 (Fed. Cir. 1999) ........................ 14

*Baker v. Selden*, 101 U.S. 99 (1879) ................................................................. 8, 12

*BESPAQ Corp. v. Haoshen Trad. Co.*, 2004 WL 2348278 (D.D. Cal. Oct. 15, 2004)....... 10, 23

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104 (9th Cir.1990) ........................ 12

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ........................ 7

*Cavalier v. Random House*, 297 F.3d 815 (9th Cir. 2002) ........................................... 9

*Cooling Sys. And Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485 (9th Cir. 1985); ......... 9

*Data East U.S.A., Inc. v. Epyx, Inc.*, 862 F.2d 204 (1988).......................................... 22

*Duly v. Palmer*, 6 F. Cas. 1132 (S.D.N.Y. 1868) ..................................................... 18

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) .......................................................... 8, 12

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211
   (9th Cir. 1997)................................................................................. 12, 14, 16

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003)..................................... 10

*Feist Pubs. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..................................... 15, 22

*Frybarger v. Int'l. Bus. Mach. Corp.*, 812 F.2d 525 (9th Cir. 1987) ............................. 9

*Harper & Bros. v. Kalern Co.*, 169 F. 61 (9th Cir. 1990)........................................... 18

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971) .............. 10, 13

*Hoopla Sports and Entertainment v. Nike*, 947 F. Supp. 347 (N.D. Ill. 1996). .............. 21

*Horgan v. MacMillan, Inc.*, 789 F.2d 157 (2d Cir. 1986)........................................... 19

*Idema v. DreamWorks, Inc.*, 162 F.Supp.2d 1129 (C.D. Cal. 2001) ............................. 10

*Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir. 1984), ........... 9

*Magic Marketing, Inc. v. Mailing Servs of Pittsburgh, Inc.*, 634 F. Supp. 769 (W.D. Pa. 1986) .................................................................................................................................... 7

*Mazer v. Stein,* 347 U.S. 201 (1954) .................................................................................... 9

*Narrell v. Freeman*, 872 F.2d 907 (9th Cir. 1989) .............................................................. 7

*National Basketball Ass'n and NBA Properties, Inc. v. Motorola, Inc.,* 105 F.3d 841 (2d Cir. 1997) .................................................................................................................. 21, 22

*Pivot Point Inter., Inc. v. Charlene Prods, Inc.*, 932 F. Supp. 220 (N.D.Ill. 1996) ................... 7

*Properties, Inc. v. Motorola, Inc.,* 105 F.3d 841 (2d Cir. 1997). .......................................... 21

*Rachel v. Banana Republic, Inc.*, 831 F.2d 1503 (9th Cir. 1987) ....................................... 9, 10

*Religious Tech. Center v. Netcom Online,* 923 F.Supp. 1231 (N.D. Cal. 1995) ...................... 12

*S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081 (9th Cir. 1989) ................................................. 12

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), cert. denied, 540 U.S. 983 (2003) ............. 9, 17

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) .................................................................. 9

*Sid & Marty Krofts Television Prods., Inc. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir. 1977). .................................................................................................................................... 9

**Statutes**

17 U.S.C. § 101 ...................................................................................................................... 14

17 U.S.C. § 102(a) .................................................................................................................. 17

17 U.S.C. § 102(b) ......................................................................................................... 9, 13, 15

17 U.S.C. § 408(b) .................................................................................................................. 11

17 U.S.C. § 410(c) .................................................................................................................. 12

35 U.S.C. § 101 ...................................................................................................................... 13

**Rules**

37 C.F.R. § 201.5 .................................................................................................................... 11

37 C.F.R. § 202.3(b)(1)(ii)(2004) .......................................................................................... 5

Fed. R. Civ. P. 56 .................................................................................................................... 7

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 53-54 (1976) ................................................. 17, 19

S. Rep. No. 473, 94th Cong., 1st Sess. 52 (1975) ........................................................... 17, 19

**Other Publications**

1 *Nimmer on Copyright* § 2.18(H)(3) .................................................................................... 21

1-2 *Nimmer on Copyright* § 2.07 ............................................................................ 18

1-2 *Nimmer on Copyright* § 2.18 ............................................................................ 17

2 *Nimmer on Copyright* § 7.21 ............................................................................... 13

*Administrative Adjudication and the Various Bases for Court Review in Copyright Registration*, 35 Idea 129 (1994)............................................................................ 13

*Distinguishing Patent and Copyright Subject Matter*, 35 Conn. L. Rev. 439 (2003)............... 13

*Copyright Office Practices Compendium II* (1984) ............................................... 19

*Choreography, Pantomime and the Copyright Revision Act of 1976*, 16 New England Law Review 227 (1982)............................................................................................ 19

*American Heritage Dictionary of the English Language* (4th ed 2000) ................................... 14

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2005, at 9:00 a.m. or as soon thereafter as this matter may be heard, Open Source Yoga Unity ("OSYU") will move the Court for summary judgment on Claim I of the Amended Complaint, the issue of copyright validity and scope.   OSYU will ask the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for a ruling that Bikram Choudhury's claimed copyright in the Bikram Basic Yoga System is invalid as a matter of law and that his copyrights in written works describing the yoga system and videotapes demonstrating it cannot, as a matter of law, be infringed by the act of teaching a yoga class.   This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of James P. Harrison, the oral argument of counsel and the pleadings and papers on file in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

OSYU, a nonprofit organization, brought this declaratory judgment action to protect the rights of yoga teachers to use and teach yoga postures ("asanas") that have been in the public domain for centuries, in any order or routine that they choose, and to ask this Court to reject the spurious claims of a litigious yogi that he has exclusive rights in a method of using these postures, and, therefore, exclusive rights in other combinations of these postures.

Mr. Choudhury is a master yoga teacher and self-proclaimed "guru to the stars" of Beverly Hills.   In or around 1965, he created a yoga exercise routine from 26 public domain Hatha Yoga asanas and two breathing exercises,  arranging them in the specific order that he "scientifically" determined would induce specific physical responses and thus provide overall health and fitness benefits.  Since then he has touted the "Bikram method" as the cure for everything from arthritis to gout to varicose veins.

Despite his belief in the efficacy of his system as a method for curing disease and improving fitness, Mr. Choudhury never applied for a patent on his eponymous invention.  He

did, however, publish an instructional book and other writings about it.  It is undisputed that he holds copyright in his writings as well as an instructional audio tape.  Unlike patents, copyright registrations are cheap and easy to acquire simply by filling out a two-page form and depositing a copy of the claimed work with the Copyright Office.  They also last several times longer than patents.   Mr. Choudhury now seeks to use his copyrights on his writings as if they were patents — asserting that they give him exclusive rights to use and "sell" the fitness system described in them for the entire term of each copyright.   He has sent out numerous cease and desist letters to other yoga instructors and even sued a small, family yoga studio as a warning to other "infringers."  These actions give OSYU standing to ask this Court for declaratory relief.

Defendant's novel claim to copyright in the Bikram yoga system is invalid as a matter of law under Section 102(b) of the Copyright Act.  The Bikram system belongs to a class of physical fitness exercises and sports, which, lacking the originality, expressive content, and aesthetic purpose of pantomime and choreography, are denied protection as "works of authorship" under copyright law.  Attempting to register an exercise routine as "performing arts" (after twenty-five years of touting it as a miracle cure) does not change its essential character.  Moreover, Mr. Choudhury is judicially estopped from now claiming that the yoga system is somehow expressive rather than functional.   Finally, his claim to copyright is invalid because the yoga system at issue lacks originality: he took the postures from the public domain, where they have been shared by yoga instructors for centuries, and arranged them in a purely functional order.

Mr. Choudhury's copyrights in books, writings, illustrations and video cassettes teaching the practice of yoga cannot, as a matter of law, protect the yoga system described in them.  It is axiomatic that copyright law protects only expressions of ideas and not ideas themselves.  OSYU is not seeking the right to make and sell mechanical reproductions of Mr. Choudhury's writings or audiotapes or videotapes, just the right of teachers to teach the asanas, ideas and methods.

Therefore, OSYU is entitled to summary judgment that any claim to copyright in the yoga system itself (the sequence of asanas) is invalid as a matter of law.  OSYU is further entitled to judgment that none of the copyrights Mr. Choudhury owns in his writings and videotapes can be enforced against someone who merely teaches or practices the yoga system or a similar routine using the same public domain asanas.

## II.   STATEMENT OF FACTS

### A.   The Bikram Basic Yoga System

Derived from ancient Hindu practices, Hatha Yoga is a form of physical exercise comprising bodily movements called "asanas," "poses," or "postures," and breathing exercises. *See* Declaration of James P. Harrison ("Harrison Decl."), Exh. A (*Bikram Choudhury, Bikram's Beginning Yoga Class* (2d ed. 2000)) at xiii ("the Hatha Yoga System . . has been known for thousands of years") at xi (yoga is an "exercise").  Bikram Choudhury is a celebrity yoga teacher based in Beverly Hills, where he runs Bikram's Yoga College of India.  It is undisputed, for purposes of this motion, that Mr. Choudhury "discovered and developed" a Hatha Yoga exercise routine known as "Bikram's Beginning Yoga Class" or "Bikram's Basic Yoga System" or simply "Bikram yoga" "after years of research."  Harrison Decl., Exh. B at ¶ 12, alleging the work was discovered and developed in about 1971; Harrison Decl., Exh. C at D0568 (representing to the Copyright Office that  the work sought to be registered was created in 1965).

It is undisputed that the individual postures in Bikram yoga are ancient and in the public domain.  *See* Harrison Decl., Exh. A at xi ("In this book, you will learn the Hatha Yoga asanas (postures) as set down by Patanjali over 4,000 years ago.") and Exh. C at D0569 (application to the Copyright Office stating that "Bikram's Asana Sequence" is a "derivative work" based on "selection, arrangement, and ordering" of "public domain asanas").

Mr. Choudhury selected and arranged the public domain postures and breathing exercises in the specific order of the Bikram yoga system to produce physical effects on the body:  "[Mr. Choudhury] *scientifically designed this 90-minute program to deliver total health through the balancing and strengthening of every system in the body in order to prevent illness*

and injury, promote weight loss and limit the effects of aging." Harrison Decl., Exh. D (brochure).  Mr. Choudhury consistently teaches that "[e]ach posture stretches and strengthens specific muscles, ligaments and joints needed for the next posture.  The Bikram method also stimulates the organs, glands and nerves, moving fresh oxygenated blood to 100 percent of the body, restoring all systems to a healthy working order." *Id*.  In his book, Mr. Choudhury explains "[t]his series has been proven over and over again to cure chronic diseases of all kinds.  I have confirmed the value of this Yoga series again and again, scientifically, medically."  Harrison Decl., Exh. A at xi.  Mr. Choudhury has also explained that "the intended benefits from Bikram Yoga can only be derived if the yoga class is performed precisely as Bikram developed it." Harrison Decl., Exh. B at ¶ 13.

In the years since 1965, Mr. Choudhury has taught the "Bikram yoga system" to thousands of students and trained thousands of yoga teachers to teach more students.  Perhaps "millions" more students and teachers learned the Bikram yoga system directly from his book, *Bikram's Beginning Yoga Class*.  "In the years that followed the publication of my book, millions of people have used it.  They followed my instructions and they cured and healed their problems, emotional problems and chronic diseases."  Harrison Decl., Exh. A at xi.  Over the years, Bikram yoga has grown in popularity.  Hundreds of studios, gyms, and fitness centers offer instruction in Bikram Yoga.  *See* Harrison Decl., Exh. E at ¶¶ 3 and 19.  Until a few years ago, Mr. Choudhury was content to have people use the yoga system they learned from his book or tapes.   "This Hatha Yoga is for everyone and every body."  Harrison Decl., Exh. A at  xi.  Now, however, he claims that only he may use, sell and teach the Bikram method.

**B.     Defendant's Registered Copyrights**

**1.     Defendant's Six Textual Work Registrations**

It is undisputed that Mr. Choudhury has secured six registrations, one of which is a "supplementary" registration (correcting or amplifying information provided in an earlier copyright application), for copyright in textual works.   The Copyright Office has issued certificates of registration (TX-179-160 and TX5-529-325) for the two editions of Mr.

Choudhury's instructional book, *Bikram's Beginning Yoga Class*, 1978 and 2000 (revisions and additional text), plus a supplementary registration (TX-5-624-003) also relating to the first edition.  *See* Harrison Decl., Exhs. G , H, I and P.    It is undisputed that the Copyright Office issued a certificate of registration for the text spoken on the sound cassette of *Bikram's Beginning Yoga Class* (TX-5-499-622) (April 2002).  Harrison Decl., Exh. J and Exh. P.

It is undisputed that the Copyright Office issued a certificate of registration (TXU-1-022-657) (March 2002) for the non-dramatic literary text of Mr. Choudhury's 1971 "*Bikram's Yoga College of India Beginning Yoga Dialogue*" — a written script of practical instructions for practicing (or attempting) the physical postures and breathing exercises in the Bikram yoga system.  *See* Harrison Decl., Exh. K and Exh. P.  It is undisputed that the Copyright Office issued a certificate of registration for a curriculum outline, *Bikram's Yoga College of India: Yoga Teacher Training* (TXu-934-417) (March 2002).  Harrison Decl., Exh. L and Exh. P.

### 2.        Rajashree Choudhury's Audiovisual Work Registration

It is also undisputed that Mr. Choudhury's wife, Rajashree, has obtained a performing arts registration (PA-1-053-335)  (Feb. 2002) for *Yoga for Pregnancy* (also known as *Rajashree's Pregnancy Yoga*).  This is a videocassette in which Rajashree Choudhury and others demonstrate how to do a variation of the Bikram yoga system specially adapted for women in advanced stages of  pregnancy.  Harrison Decl., Exh. M  and Exh. N.  It is offered for sale on Mr. Choudhury's website, which provides endorsements by three doctors, *e.g.* "I can't recommend a system of exercise as effective as Rajashree's pregnancy video."  Harrison Decl., Exh. N.

### 3.        Defendant's Attempt to Register Copyright in the Yoga System Itself

On October 23, 2002, Mr. Choudhury filed an application to register copyright in a work entitled "Bikram's Asana Sequence" as a performing arts work.[1]  Harrison Decl., Exh. C.  The application indicates that a videotape was deposited embodying the "work" for which

---

[1]    Class PA, "works of the performing arts," includes "pantomimes and choreographic works; and motion pictures and other audiovisual works."  37 C.F.R. § 202.3(b)(1)(ii)(2004).

1   registration was sought, but Mr. Choudhury has failed to produce a copy of this tape (other

2   than a photocopy of the outside of the cassette).  Harrison Decl., Exh. O.  Thus it is unclear

3   from the documents exactly what Mr. Choudhury was trying to claim in this PA application,

4   but public Copyright Office records show that, to date, the Copyright Office has not issued Mr.

5   Choudhury a performing arts registration certificate for "Bikram's Asana Sequence."  Harrison

6   Decl., Exh. P.

7              **C.      Defendant's Threats to Sue Teachers**

8         Many yoga teachers now teach the Bikram yoga system described in the 1978 book

9   and Mr. Choudhury's other writings.  Other yoga teachers teach routines similar to the Bikram

10  system but have varied the exact "combination of a specific sequence of yoga postures,

11  breathing exercises, temperature and a dialogue" that Mr. Choudhury developed.  Harrison

12  Decl., Exh. Q at ¶¶ 5 and 8.  In response, Mr. Choudhury has sent out numerous cease and

13  desist letters to yoga teachers stating that they are infringing his copyrights and has sued one

14  small family-run yoga studio for infringement.  *See id.* at ¶¶ 6 and 9; and Harrison Decl., Exh.

15  B.  On February 5, 2003, Mr. Choudhury posted a press release on his website, signed by

16  Attorney Jacob Reinbolt.  Mr. Reinbolt's announcement states that Mr. Choudhury "recently

17  secured federal copyright registration under 17 USC Section 410 for his original work of

18  authorship in his asana sequence of 26 postures and 2 breathing exercises.  Through

19  registration of this work, the United States Copyright Office acknowledges Bikram's exclusive

20  right to the district series of postures and breathing exercises comprising the sequence and

21  Bikram's beginning yoga class."  Harrison Decl., Exh. E at ¶ 21.  In the February 5

22  announcement, Attorney Reinbolt further stated that:

23

24          Due to the originality of the sequence and the strength of the copyright
            registration, infringement of the sequence copyright can occur in a number of
25          ways.  In addition to exact copying of the sequence, the copyright prohibits
            others from creative "derivative" works of the sequence.  Virtually all
26          modifications or additions to the sequence will constitute copyright
            infringement, including:  the unauthorized use of even a small number of
27          consecutive postures; the addition of different postures or breathing exercises to
            the sequence or portions of the sequence; the teaching or offering of the
28

1    sequence with or without the Dialogue; or by the addition of extra elements to the sequence, like music.

2

3    *Id.* (also available at http://www.bikramyoga.com/)  In short, Mr. Choudhury's attorney

4    asserted that no one may teach the asanas and breathing exercises that are used in the Bikram

5    yoga system without paying Mr. Choudhury or risking liability for enormous sums.

6           OSYU is a California non-profit corporation dedicated to defending the idea that yoga

7    postures are part of the public domain and should be free for all to use, teach, and develop.

8    OSYU brought this declaratory judgment action against Mr. Choudhury on behalf of its yoga

9    teacher members on July 9, 2003, after his "statements on his website . . . his practice of

10    sending cease and desist letters threatening litigation, and his history of pursuing litigation"

11    gave one or more of OSYU's members "real reason to fear" he might sue them.  Harrison

12    Decl., Exh. R at 9.  The Court denied Defendant's Motion for Partial Summary Judgment

13    (standing) on April 19, 2004.  *Id.*

14                  **III.   ARGUMENT**

15        **A.   Legal Standard**

16           OSYU is entitled to partial summary judgment if it demonstrates that there is no

17    genuine issue of material fact, and that OSYU is entitled to judgment as a matter of law.  Fed.

18    R. Civ. P. 56.  Federal courts often resolve copyright claims on summary judgment.  *Brown*

19    *Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992); *Narrell v. Freeman*, 872

20    F.2d 907, 910 (9th Cir. 1989) ("We frequently have affirmed summary judgment … on the

21    issue of substantial similarity.").  Copyrightability is a far less fact-intensive determination

22    than substantial similarity and is particularly appropriate for resolution by summary judgment.

23    *Pivot Point Inter., Inc. v. Charlene Prods, Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996)

24    (copyrightability is a question of law, " typically resolved by a motion for summary

25    judgment."); *Magic Mktg., Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F. Supp. 769, 771

26    (W.D. Pa. 1986) (same).  The Court can determine, as a matter of law, that the exercise routine

27    known as Bikram yoga is a method or system for exercising the human body, not an artistic

28    performance, and therefore not protectable by copyright.  Similarly, the Court can conclude

1    that teaching public domain yoga exercises, even in the same order in which Choudhury

2    teaches them, is not a "performance" of any of Mr. Choudhury's registered written works or

3    videotapes and thus not an exclusive right of Mr. Choudhury's.  Accordingly, summary

4    judgment is appropriate.

5         **B.    Defendant's Copyrights In Instructional Works Do Not Give Him
                  Exclusive Rights To Teach The Ideas and Methods Described or**
6         **Demonstrated In Those Works.**

7         OSYU does not dispute that Mr. Choudhury holds copyright in two editions of his

8    book,  various writings, his 1971 "Dialogue," his wife's pregnancy video, his audio tape

9    describing how to do the exercises in the yoga system, and his written descriptions of the

10   curriculum of his teacher training program.  The copyright he holds in these works, however,

11   cannot give him exclusive rights to teach the Bikram yoga system (the asana sequence)

12   contained in those copyrightable works.  These copyrights protect only against creation of

13   identical or substantially similar copies of these writings, audiotapes and videotapes.

14        "The description of the art in a book, though entitled to the benefit of copyright, lays

15   no foundation for an exclusive claim to the art itself." *Baker v. Selden*, 101 U.S. 99 (1879).

16   "And where the art taught by a book on science or the useful arts cannot be used without

17   employing the methods and diagrams used to illustrate the book, or such as are similar to

18   them, the methods and diagrams are considered as necessary incidents to the art, and as given

19   therewith to the public; not given for the purpose of publication in other works explanatory of

20   the art, but for the purpose of practical application." *Id.* at 103.  Thus, a reader or viewer of

21   copyrighted work is free to "make full use of any fact or idea she acquires."  *Eldred v.*

22   *Ashcroft*, 537 U.S. 186, 217 (2003).  For example, "someone who buys a book full of ideas for

23   new machines may build and sell one of the machines without infringing the author's

24   copyright." *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 981 (7th Cir. 1997).

25   Only patent law, not copyright law, can "prevent full use by others of the inventor's

26   knowledge." *Eldred*, 537 U.S. at 217; 1-2 *Nimmer on Copyright* § 2.18 (distinction between

27   copyright law, which prevents *copying*, and patent law, which prevents *using*).

28

1    Copyright in literary or pictorial matter does not extend to the underlying facts or ideas.

2   17 U.S.C. § 102(b); *Cavalier v. Random House*, 297 F.3d 815, 823 (9th Cir. 2002)

3   ("Copyright law only protects expression of ideas, not the ideas themselves."); *Mazer v. Stein*,

4   347 U.S. 201 (1954);  s*ee also Allan v. Academic Games League of Am.*, 89 F.3d 614,617 (9th

5   Cir. 1996); *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485,488 (9th Cir.

6   1984) (recognizing "a strong policy permitting all to use freely the ideas contained in a

7   copyrighted work so long as copyrighted expression is not appropriated"); *Cooling Sys. And*

8   *Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485,491 (9th Cir. 1985); *accord, Frybarger v.*

9   *Int'l. Bus. Mach. Corp.*, 812 F.2d 525,529 (9th Cir. 1987); *Sid & Marty Krofft Television*

10  *Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir. 1977).

11    In its recent opinion in *Satava v. Lowry,* the Ninth Circuit held that an artist who

12  created sculptures of jellyfish encased in glass spheres could only prevent others from making

13  *identical* copies of his works, not from using his ideas.  He could not bar creation of similar

14  sculptures with the same basic elements (*i.e.* bright colors, vertical swimming, clear glass,

15  tapered shape), because these elements were inherent in the idea, or stock elements, of

16  depictions of jellyfish and their aquatic environments, and the "centuries-old art form" of

17  glass-in-glass sculpture:

18           These elements are part of the public domain. They are the
             common property of all, and Satava may not use copyright law
19           to seize them for his exclusive use.

20  323 F.3d 805, 811 (9th Cir. 2003), *cert. denied,* 540 U.S. 983 (2003).

21    The basic postures, breathing exercises, and sequencing of the Bikram Basic Yoga

22  System, like the sculptural elements at issue in *Satava*, are inherent in the idea, or stock

23  elements, of the centuries-old practice of Hatha Yoga.  *See* Harrison Decl., Exh. A at xii.  This

24  Court should reject Defendant's attempts to stretch his copyrights beyond their proper scope in

25  order to explicitly seize hatha yoga from the public domain for his exclusive use  and profit.

26  *See Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) ("Copyright law protects an

27  author's expression; facts and ideas within a work are not protected."); *see also Aliotti v. R.*

28  *Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987); *see also Rachel v. Banana Republic, Inc.*, 831

OSYU's Motion for Partial Summary Judgment                              Case No. C 03-3182 PJH
Claim I – Copyright
                                    -9-

F.2d 1503, 1507 (9th Cir. 1987); *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971); *Idema v. DreamWorks, Inc.,* 162 F.Supp.2d 1129, 1179 (C.D. Cal. 2001).

Corollary to the idea/expression dichotomy are the doctrine of scenes a faire and merger. The scenes a faire doctrine holds that when certain elements are inherent or standard in treatment of an idea or theme they are not covered by copyright. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765-66 (9th Cir. 2003). And where there is only one or a very limited number of ways of expressing an idea, the doctrine of merger holds that the idea and expression have merged and neither is protected by copyright. *Herbert Rosenthal*, 446 F.2d at 742 (where merger occurs "copying the 'expression' will not be barred, since protecting 'expression' in such circumstances would confer a monopoly on the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law.") *See Rachel,* 831 F.2d at 1507; *BESPAQ Corp. v. Haoshen Trad. Co.,* 2004 WL 2348278 (N.D. Cal. Oct. 15, 2004).

Given the traditional form of Hatha Yoga and physical restraints on the possible range of human bodily movements, and the desire to teach some standing, some sitting, some prone and some supine postures in each yoga class, there are only a limited number of hatha yoga postures and breathing exercises, and sequences of them, that can be practiced. To the extent that Defendant attempts to use his copyrights in books and his 1971 non-dramatic text "Dialogue" to prevent others from practicing Hatha Yoga in the limited number of ways available, the Court should invoke the merger doctrine. *See Apple Computer v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (the idea and expression of icons depicting "familiar objects from the office environment" merges). The 1971 Dialogue is nothing more than instructions for performing a method for exercising the body. *See* Harrison Decl., Exh. S. As such, the Court can and should hold that it is subject to merger. At any rate, OSYU's members seek to teach the postures using their own words, not mechanically recite a memorized script in each and every class. At a minimum, they are entitled to judgment that teaching the public domain postures in their own words is not, as Mr. Choudhury contends, a public performance that infringes copyright in the Dialogue.

1    Further, to teach students how to execute physical postures and breathing exercises,

2  yoga teachers must be able to describe how the body should be positioned and how students

3  can correct their form.  Thus, this Court should not allow Defendant to claim, through

4  copyright in his 1971 "Dialogue," a monopoly on the most basic yoga instructions.   The

5  Dialogue largely consists of simple words and phrases explaining how to do each pose.  For

6  Example (from Half-Moon pose):

7          Pull on your heels as much as possible.   Stretching your body
         down from the lower spine towards the floor.  Touch your
8          stomach on the thighs, chest on the knees, face on the legs below
         the knees.  Your whole body is touching the legs like a
9          sandwich.  No gap anywhere.  Slowly push your knees back as
         hard as possible, trying to lock your knees.
10

11  Harrison Decl., Exh. S at D0458.  To the extent that Defendant's copyrighted expression

12  contains one of a very limited number of ways to explain how to do the Half-Moon pose,

13  merger has occurred and copyright does not protect against even verbatim repetition.  Under

14  the idea/expression dichotomy and scenes a faire and merger doctrines, copyrights Defendant

15  owns in books or audiovisual works do not protect the twenty-six yoga postures and breathing

16  exercises themselves, the idea of arranging them in sequential order, or any words or

17  instructions necessary to convey how to perform them.  Thus, he cannot bar others from using

18  this knowledge freely by practicing or teaching the system.

19    Mr. Choudhury seems to place great significance on the 2002 "supplementary

20  registration" certificate for the First Edition of *Bikram's Beginning Yoga Class*.  Harrison

21  Decl., Exh. I.  But Supplementary registration is simply a procedure for correcting or

22  amplifying information in a prior copyright registration.  17 U.S.C.  408(b).  Corrections

23  include remedying the addition or omission of an author.  Amplifications include correction of

24  omissions from basic registration, *e.g.,* of a co-author; changes in facts since the basic

25  registration, change of title; or explanations clarifying information in the basic registration.

26  *See* 37 C.F.R.  § 201.5; *see also* Harrison Decl., Exh. T.  The supplementary negotiation

27  merely memorializes Mr. Choudhury's claim that he selected and arranged the asanas in

28  sequence, a fact which is not in dispute in this motion.   This kind of "errata sheet" filed in

1  2002 with respect to the 1978 book cannot overrule *Baker v. Seldin's* holding that the

2  description of an invention in a book lays no foundation to exclusive right in the invention

3  itself.  101 U.S. at 99.   A reader of a book is still "free to make full use of any fact or idea she

4  acquires."  *Eldred*, 537 U.S. at 217.   The Court should so order with respect to the ideas and

5  facts in Mr. Choudhury's book.

6  
7  **C.      The Evidentiary Significance of Defendant's Copyright
         Registrations**

8          Section 410(c) of the Copyright Act gives presumptive validity to material registered

9  within five years of publication.  17 U.S.C. § 410(c).  Works registered more than five years

10 after publication, however, are not entitled to this presumption.  *Religious Tech. Center v.*

11 *Netcom Online,* 923 F.Supp. 1231, 1242 (N.D. Cal. 1995).  Here, Mr. Choudhury registered

12 copyright in his instructional book in 1979, within two years of writing it.  He did not even

13 attempt to register copyright in the asana sequence itself or his 1971 "Dialogue" or the

14 curriculum until 2002.  Accordingly, the certificate of registration for the 1971 Dialogue is not

15 even entitled to a presumption of validity.  *See id.*  Mr. Choudhury has produced no certificate

16 of registration on the PA form for the asana sequence as a work of performing arts.

17         Even were this Court to give each one of Mr. Choudhury's copyright registrations

18 prima facie weight, copyright validity "may be rebutted and defeated on summary judgment."

19 *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir. 1989).  To burst the presumption of

20 validity conferred by registration, the opposing party "must simply offer *some* evidence or

21 proof" to dispute validity.  *Entertainment Research Group, Inc. v. Genesis Creative Group,*

22 *Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1997) (emphasis added).

23         Courts can and do overturn the validity (or limit the scope) of registered copyrights.

24 *See, e.g., Bibbero Sys., Inc. v. Colwell Sys., Inc.,* 893 F.2d 1104, 1106 (9th Cir.1990)

25 (affirming summary judgment that "superbill" business form not copyrightable subject matter

26 despite valid registration certificate).  Their willingness to do so reflects that issuance of

27 copyright registration is nearly automatic upon application.  Unlike the United States Patent

28 and Trademark Office ("USPTO"), the Copyright Office does not examine copyright

applications even for basic validity.  2 *Nimmer on Copyright § 7.21.*   Therefore, it is unable to screen out many copyright claims that are obviously invalid.  *See Herbert Rosenthal,* 446 F.2d at 740 (contrasting copyright registration with the more stringent "substantive and procedural protections" of patent registration and noting that "the prerequisites for copyright registration are minimal."  *See generally*  Kevin Hooper, *Administrative Adjudication and the Various Bases for Court review in Copyright Registration,* 35 Idea 129, 131 (1994).

Mr. Choudhury's online announcement that a certificate of registration for a written text or a videotape means that "the United States Copyright Office acknowledges Bikram's exclusive right to the distinct series of postures and breathing exercises comprising the sequence and Bikram's Beginning Yoga Class" is simply contrary to fact and contrary to over one hundred years of United States copyright law.  OSYU simply asks that this Court set the record straight.

### D.      Copyright Does Not Cover Functional Works.

The Copyright Act expressly excludes procedures, processes, systems, and methods of operation from copyright protection.  "[I]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).  These kinds of works are functional rather than creative, and therefore covered under the Patent Act, which protects "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  Patents "are more narrowly defined than copyrights, are harder to get, persist for a shorter time, and are easier to defend against in cases of nonliteral copying"; thus, individuals like Mr. Choudhury, who try to use copyright as an end run around patent law threaten the checks and balances built into U.S. intellectual property law.  Dennis S. Karjala, *Distinguishing Patent and Copyright Subject Matter*, 35 Conn. L. Rev. 439, 453 (2003).

The *American Heritage Dictionary* defines "process" as "a series of actions, changes, or functions bringing about a result," and "method" as "a means or manner of procedure,

especially a regular and systematic way of accomplishing something" or "orderly arrangement of parts or steps to accomplish an end." *American Heritage Dictionary of the English Language* (4th ed. 2000). The Federal Circuit has defined as a patentable process or method a series of steps "applied in a practical manner to produce a useful result." *AT&T Corp. v. Excel. Communs., Inc.*, 172 F.3d 1352, 1356, 1360 (Fed. Cir. 1999).

Utility or functionality, while an absolute requirement for patent protection, is expressly not protected by copyright law. *See* 17 U.S.C. § 101. "Any aspects" of a work "that are purely functional, utilitarian or mechanical, will not be given any copyright protection." *Entertainment Res. Group v. Genesis,* 122 F.3d at 1221.

Mr. Choudhury's own writings tell the truth about the nature of the exercise routine he compiled. His focus on the utilitarian benefits of the Bikram yoga system demonstrates that the System is functional. He describes the Bikram yoga system, as a "safe and lasting way to cure, or relieve the symptoms of chronic ailments and achieve total health." Harrison Decl., Exh. A at 199. He maintains that performing the twenty-six poses "exactly in the order and in the manner described" is the only way to realize the full purported health benefits. *Id.* at 199. The order of exercises in his routine is functional, "designed to scientifically warm and stretch muscles, ligaments and tendons in the order in which they should be stretched." Harrison Decl., Exh. U.

Mr. Choudhury explains that the Bikram Basic Yoga System begins with a breathing exercise "to increase the capacity and elasticity of your lungs and move oxygen into your bloodstream, get it to all the corners of your body so they are awake and ready for other exercises." Harrison Decl., Exh. A at 5. Attempting each pose twice in a row similarly is functional. The first set of postures "stretches you, limbers you up, and gets the muscles warmed" so that "you can go farther and do pose better the second time." *Id.* at 35. Subsequent exercises are sequenced to work different muscle groups and combine the skills used in the previous poses. *Id.* at 52. The placement of the "last poses" is "not at all haphazard." It takes advantage of the effects of the warm up poses to allow "the fullest stretch you are capable of." Mr. Choudhury contends that students cannot do these poses earlier in

1   the sequence without physical injury.  *Id.* at 176.  Standing and floor poses, respectively, are

2   grouped based on the level of difficulty for functional reasons.  *Id.* at 112 ("All the standing

3   exercises, they are warm-up.  The floor exercises are the serious Yoga.")  Certain postures are

4   interposed between blood-constricting poses in order to "return circulation to normal."  *Id.* at

5   111.  Always, each posture is included and ordered according to its physical effect on the body

6   and functional benefits.  *Id.* at 157 ("because relaxation is the aim of the posture, it works

7   magic on tense neck and shoulders").

8        Mr. Choudhury's own statements in his 1978 book and on his website this very day,

9   prove, without a doubt, that the Bikram method is intrinsically functional and therefore,

10  ineligible for copyright protection under 17 U.S.C § 102(b).  Today he may take the tortured

11  position that the beginning yoga class is a work of art.  But Mr. Choudhury is now estopped

12  from changing his position with respect to the nature of his invention.  *See Arica Inst., Inc. v.*

13  *Palmer*, 970 F.2d 1067, 1076 (2d Cir. 1992).

14       A method of exercising the body is properly the subject of a patent; not a copyright.

15  Indeed, others properly applied to the USPTO and have obtained patents on methods of using

16  yoga exercises and other exercises to produce physical results.  Harrison Decl., Exh. V.  Mr.

17  Choudhury is now trying to use his copyrights in books and sound and video cassettes to get

18  what he failed to secure legitimately through patent law:  a patent-like monopoly on using or

19  selling a specific system or process.  This attempt is antithetical to the purpose, and express

20  dictates, of copyright law.  Therefore, the Court should hold that Mr. Choudhury has no

21  copyright in the Bikram Basic Yoga System.

22       **E.      The Bikram Basic Yoga System Lacks Sufficient Originality For
                  Copyright**

23

24       In *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* the Supreme Court

25  explained that "the sine qua non of copyright is originality."  499 U.S. 340, 345 (1991).  In

26  order to be "original, as the term is used in copyright," the work must be "independently

27  created by the author (as opposed to copied from other works)."  *Id*.  The originality

28  requirement reflects the public benefit rationale for the U.S. copyright system.  Moreover,

1   allowing an individual to take matter already in the public domain and lock it up through

2   copyright protection would bar other individuals from making publicly beneficial uses of the

3   same matter.

4        The Bikram Basic Yoga System lacks sufficient originality to attain copyright

5   protection.  It consists of postures and sequences of postures that have been in the public

6   domain for centuries.  Mr. Choudhury explained in 1978 in his book:

7        First, I want to tell you that Hatha Yoga is not mine.  What has become today
         known as Hatha Yoga is thousands of years old, older than the history of earth
8        and mankind that we study in school.  For thousands of years the discipline has
         been handed down from master to disciple, one to one.
9

10  Harrison Decl., Exh. A at xii.  Mr. Choudhury is also on record that he received his formal

11  training in Hatha Yoga from his guru, Bishnu Ghosh, who "scientifically established the

12  methods of curing chronic disease using Hatha Yoga."  He arrived at the Bikram sequence of

13  postures simply "having used the methods taught to me by my guru."  *Id.*   In his apparently-

14  rejected October 21, 2002, expedited application to register copyright in "Bikram's Asana

15  Sequence," as a performing arts work, Mr. Choudhury describes the nature of his authorship as

16  "selection and arrangement and ordering" of preexisting "public domain asanas."  Harrison

17  Decl., Exh. C.

18       Mr. Choudhury's claimed invention was to choose specific postures and breathing

19  exercises from Hatha Yoga, and make an exercise routine from them by putting them in a

20  specific order.  *Id.*  For purposes of this motion, it is not disputed that Mr. Choudhury created

21  the specific order of exercises in the asana sequence.  But even a new combination of public

22  domain elements is not protected by copyright where the order is entirely functional rather

23  than expressive.   As the Ninth Circuit has held, "it makes no sense to include the utilitarian

24  aspects for purposes of determining originality when it is clear, in light of § 101 of the

25  Copyright Act, that these utilitarian aspects are not copyrightable." *Entertainment Res. Group,*

26  122 F.3d at 1221.  Mr. Choudhury tells us in his book that:  "I researched the diseases and the

27  postures and, after many years of research and verification, having used the methods taught to

28  me by my guru and using modern medical measurement techniques, I arrived at the sequence

1   of postures you will find in this book." Harrison Decl., Exh. A at xii.  Having taken the

2   position in his writings that the order of postures in his sequence is a scientific discovery, Mr.

3   Choudhury is estopped from taking the position today that it is "creative."  *See Arica Inst.,*

4   *Inc.*, 970 F.2d at 1076 ("for purposes of this lawsuit we take Arica at its word and assume that

5   the sequence of the fixations…is an unalterable fact, a product of discovery and not

6   creativity").

7          Mr. Choudhury therefore fails to satisfy the constitutional requirement that a

8   copyrighted work be original.  *See Satava,* 323 F.3d at 811, 812.  *See also* 1-2 *Nimmer on*

9   *Copyright* § 2.18 (recipes are uncopyrightable because "even though the combination of

10  ingredients . . . may be original in a noncopyright sense," they are "clearly dictated by

11  functional considerations, and therefore may be said to lack the required element of

12  originality.")

13       **F.      The Bikram Yoga System is Neither a Pantomime Nor a**
                   **Choreographic Work**
14

15         The Copyright Act enumerates eight categories of copyrightable "works of

16  authorship": literary works; musical works; dramatic works; pantomimes and choreographic

17  works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works;

18  sound recordings; and architectural works.  17 U.S.C. § 102(a)(l-8).  Mr. Choudhury may now

19  contend that the "asana sequence" known as Bikram yoga falls within the scope of

20  "pantomimes and choreographic works."  Abraham Lincoln once asked an audience "How

21  many legs will a sheep have if you call the tail a leg?" "Five" someone replied.  "You are

22  mistaken," said Lincoln, "for calling a tail a leg don't make it so."  Nor does calling an

23  exercise class pantomime or choreography make it so.

24         These terms are not defined in the 1976 Copyright Act, and the House and Senate

25  Reports both specify that their "fairly settled meanings" should be used. S. Rep. No. 473, 94th

26  Cong., 1st Sess. 52 (1975); H.R. Rep. No. 1476, 94th Cong., 2nd Sess. 53-54 (1976).

27

28

### 1.      The Bikram Yoga System is Not a Pantomime

Pantomime is "a species of theatrical entertainment, in which the whole action is represented by gesticulation, without the use of words." *Harper & Bros. v. Kalern Co.,* 169 F. 61, 63 (9th Cir. 1990) (citing *Duly v. Palmer,* 6 F. Cas. 1132, 1136 (S.D.N.Y. 1868)).  A mime uses his or her body as a medium for dramatic expression.  Mr. Choudhury's claimed yoga system, by contrast, has no dramatic or entertainment content or purpose.  His book describing the yoga class is registered as an "instructional work."  Harrison Decl., Exhs. G and H.  The 1971 Dialogue is registered as a "nondramatic literary text."  Harrison Decl., Exh. K.  He cannot now claim the sequence has dramatic content.  *See Arica Institute,* 970 F.2d at 1075.

The beginning yoga class does not tell a story, create a character, imitate something, or convey any expressive message.  Admittedly, some of the fanciful names of the ancient hatha yoga poses could suggest that the yogi is imitating something – a camel, an eagle, a cobra, or a corpse – but Mr. Choudhury explains otherwise.

> "Bikram, why is that called the Camel?"
> "Why so interested suddenly in the names of postures, Archie?
> Yoga is thousands of years old. Somewhere along the line a
> Yogi thought the position was like the hump of a camel and
> named it the Camel."
> "But it doesn't look anything like a camel."
> "So what? I am not responsible for a Yogi with bad eyesight."

Harrison Decl., Exh. A at 171.  Further, as this exchange suggests, in contrast to pantomime, which is *silent*, the Bikram class described in the book is often characterized by an ongoing verbal exchange between the yoga instructor and the students.  In the book, Mr. Choudhury, a master yoga teacher, does not rigidly recite a script regardless of what his students are doing.  Instead he constantly praises, critiques, and jokes or chats with students.  *See, e.g., id.* at 135.  OSYU's members have the right to offer their students the same, personal, hands-on instruction.  *See* 1-2 *Nimmer on Copyright § 2.07* ("If, then, the additional grant of copyright protection to pantomimes is not be construed into a mere redundancy [of other dramatic works], it would seem that *it must refer to gestures without speech. . . .*") (emphasis added).  For these reasons, Bikram yoga is not pantomime.

## 2.   The Bikram Yoga System is Not Choreography

Choreography is "the composition and arrangement of dance movements and patterns, and *is usually intended to be accompanied by music*.  Dance is static and kinetic successions of bodily movement in certain rhythmic and spatial relationships."  *Copyright Office Practices Compendium II* (1984), *quoted in Horgan v. MacMillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986) (emphasis added).  Choreography is generally created to be performed for an audience, and often tells a story or conveys a social or aesthetic message.  *See, e.g.,* Martha M. Traylor, *Choreography, Pantomime and the Copyright Revision Act of* 1976, 16 New England Law Review 227, 229 (1981) (describing dance choreography as "for the benefit and enjoyment of the passive observer"). While these elements – music, an audience, and a story or message – are not strictly necessary for copyright protection, they differentiate choreography from physical fitness activities, sports, and the "social dance steps and simple routines" that Congress expressly excluded from its definition of copyrightable choreography.  *See* S. Rep. No. 473, 94th Cong., 1st Sess. 52 (1975); H.R. Rep. No. 1476, 94th Cong., 2d Sess. 53-54 (1976).  The Copyright Office's explanation of pantomimes and choreographic works on its website states "**Note**: Sports games and physical-fitness exercises are not considered choreographic works."  Harrison Decl., Exh. X.  Mr.  Choudhury cannot turn a physical-fitness exercise routine into a work of choreography just by sending a videotape to the Copyright Office under the "Performing Arts" application form or obtaining a supplementary representation on a book.  If it walks like a duck and quacks like a duck, it is a duck, not "Swan Lake."   And indeed no Performing Arts certificate of registration has issued from Mr. Choudhury's expedited application, in 2002, to register the asana sequence as a work of performing arts.  Harrison Decl. Exh. P.

Yoga simply is not dance.  Mr. Choudhury's yoga system is not accompanied by music – he forbids instructors to play music during classes.  Amended Complaint at ¶ 21; Def. Answer at ¶ 21 ("Virtually all modifications or additions to the sequence will constitute copyright infringement, including . . . the addition of extra elements . . . like music.").  Yoga students normally practice the exercises in the presence of only a yoga instructor and other

1   students, who are also doing the exercises, pausing to rest, drink water, or wipe sweat from

2   their bodies.  The asana sequence does not tell a story or convey any message.  Mr. Choudhury

3   selected the poses and determined their order solely for their physical effect on the yoga

4   practitioner's body, that is, for their functional value.  The point of practicing yoga is not to

5   replicate an expert yogi's "performance."

> How quickly you progress . . . will have little to do with how
> "perfectly" you can do the poses. (Few of us ever do the poses
> "perfectly.") Instead, it will have to do with how well you
> understand what you are trying to accomplish in each pose, how
> honestly you try to accomplish your goal, and how supple your
> muscles and joints have become *in comparison to the point at
> which you began.* In Yoga there is no standard of comparison
> except yourself. Perfect is the best you can do that day.

11   Harrison, Decl., Exh. U.  Once again, Mr. Choudhury's own, uncontroverted statements

12   explain that personal physical exertion, rather than perfection of form, is the goal.  "You don't

13   need to be graceful or have talent. . . And it doesn't matter how 'good' you get at the

14   positions." *Bikram's Beginning Yoga Class,* at 25.   The book's photos of "ideal" and "reality"

15   versions of most postures confirm that students are attempting the sometimes difficult poses,

16   not "performing" for an audience.

17        From Mr. Choudhury's own explanation and admissions, the Court must find that the

18   Bikram method is a physical fitness exercise method, not a work of choreography.  *See Arica*

19   *Inst.*, 970 F.2d at 1075 ("having represented to the world that Ichazo's theories are factual,

20   however, Arica is not now permitted to make an inconsistent claim so as to better serve its

21   position in litigation).  Therefore, the Court should hold that Bikram yoga is not choreography.

22

23        **G.     Physical Fitness Exercises and Sports are Expressly Excluded From
                    Protection under Copyright Law**

24        Choudhury represents Bikram yoga to the public as a physical fitness regimen,

25   designed to systematically exercise the entire body.  He advises his students to:

> follow the exercises in order, exactly as Bikram directs, and you
> won't go wrong.  Bikram's twenty-six exercises systematically
> move fresh, oxygenated blood to one hundred percent of your

28

1

2

> body, to each organ and fiber, restoring all systems to healthy
> working order, just as Nature intended. Proper weight, muscle
> tone, vibrant good health, sense of well-being will automatically
> follow.

3

4   Harrison Decl., Exh. U.  But Mr. Choudhury's repeated claims that the Bikram yoga is a

5   system of physical fitness "exercise" are irreconcilably at odds with his claim to copyright in

6   it.

7   "[No copyright may be obtained in the system or manner of playing a game or

8   engaging in any other sporting or like activity."  1 *Nimmer on Copyright* § 2.18(H)(3).

9   Methods or systems for undertaking these activities, like other functional methods and

10  systems, are excluded from copyright protection under 17 U.S.C. § 102(b).  *See, e.g.,*

11  *Hoopla Sports and Entertainment v. Nike*, 947 F. Supp. 347, 353-54 (N.D. Ill. 1996).

12  "Instruction books" or depictions of physical fitness exercises or sports are protectable only

13  insofar as the expressive matter therein is distinguishable from the idea or method

14  of the activity itself. *Id.*; *see also Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 61-1

15  F.2d 296, 300 n. 1 (9th Cir. 1979) (business ideas, such as a game concept, cannot be

16  copyrighted).

17  Preparation or execution of fitness or athletic movements does not constitute

18  authorship because it lacks sufficient originality, creativity, or expression distinct from

19  the idea of the activity itself to be protectable.  *National Basketball Ass'n and NBA*

20  *Properties, Inc. v. Motorola, Inc.*, 105 F.3d 841, 846 (2d Cir. 1997) (basketball games not

21  copyrightable).  Exercises and sports are rather uncopyrightable systems or methods primarily

22  characterized by their functional elements.  Moreover, the need to preserve free human

23  movement and to encourage open competition weigh heavily against allowing copyright

24  protection for sports or physical fitness exercises:

25

26

27

28

> Even where athletic preparation most closely resembles
> authorship ----figure skating, gymnastics, and, some would
> uncharitably say, professional wrestling--a performer who
> conceives and executes a particularly graceful and difficult-or in
> the case of wrestling, seemingly painful--acrobatic feat cannot

OSYU's Motion for Partial Summary Judgment                          Case No. C 03-3182 PJH
Claim I – Copyright

> copyright it without impairing the underlying competition in the future. A claim of being the only athlete to perform a feat doesn't mean much if no one else is allowed to try.

*National Basketball Ass'n*, 105 F.3d at 846.  *See also* Harrison Decl., Exh. X.  Similarly, in *Data East U.S.A., Inc. v. Epyx, Inc.*, 862 F.2d 204 (1988), the Ninth Circuit held that the manufacturer of a karate video game that depicted a sequence of fourteen karate moves could not sustain a copyright infringement claim against a competitor who used the same number of like moves in its own karate game because this would be tantamount to allowing the game manufacturer to claim copyright in the sport of karate itself:

> The number of combatants, the stance employed by the combatants, established and recognized moves and motions regularly employed in the sport of karate, the regulation of the match by at least one referee or judge, and the manner of scoring by points and half points are among the constraints inherent in the sport of karate.. . . After careful consideration and viewing of these features, we find that they necessarily follow from the *idea* of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the *idea* of the karate sport. As such, they are not protectable.

*Id.* at 209-10.   Because the manufacturer could not copyright karate, it could not bar its competitor through copyright law from using the particular sequence of common karate moves contained in its game.

Mr. Choudhury's claim to copyright in Bikram yoga is very similar to the claim to copyright in a group of karate moves rejected by the Ninth Circuit in *Data East*.   To allow Defendant, on the basis of his copyrighted written and audiovisual works, to prevent others performing or teaching the sequence of twenty-six asanas and two breathing exercises, not to mention "virtually all modifications or additions . . . including: the unauthorized use of even a small number of consecutive postures" would be tantamount to allowing him to claim copyright in the very idea of Hatha Yoga.  Copyright protection does not extend that far.

**H.**   **Copyright Does Not Reward Mere "Sweat of the Brow"**

It is undisputed that Mr. Choudhury worked hard to create and promote his invention. Regardless of the amount of effort involved in creating a work, however, copyright does not reward mere "sweat of the brow." *Feist Pubs.*, 499 U.S. at  354.  "Copyright extends only to 'works of authorship,' not to every commercially valuable activity." 1 *Nimmer on Copyright* §

1   2.09(F).  For example, a method of heart surgery, though it requires intensive effort to create,

2   possesses undeniable commercial value, and may be patentable, is not copyrightable subject

3   matter.  *Id.; BESPAQ, 2004 WL at 2348278 at *2 n. 3*.  Use of uncopyrightable subject matter

4   by others "is neither unfair nor unfortunate.  It is the means by which copyright advances the

5   progress of science and art." *Feist,* 499 U.S. at 350.  Because the Bikram yoga system is

6   uncopyrightable under 17 U.S.C. § 102, and Mr. Choudhury did not patent it, it is in the public

7   domain and is free for all to teach and practice.

8
                            **IV.   CONCLUSION**
9

10          Mr. Choudhury has attempted to extend his copyrights in yoga-related writings and

11  sound and video cassettes beyond their proper scope in order to bar others not only from

12  making exact reproductions of these works but also from even teaching or practicing a style of

13  yoga similar to Bikram yoga.  Mr. Choudhury thus claims copyright in the very idea, or stock

14  elements, of a physical fitness exercise that has been in the public domain for thousands of

15  years.  He seeks, through copyright law, patent-like protection for a method or scientific

16  invention.  Copyright law does not protect ideas, stock elements, and systems.  Copyright law

17  does not protect physical fitness exercises.  And copyright law does not protect purely

18  functional combinations of knowledge already in the public domain.  Copyright in textual

19  works does not provide exclusive rights to teach the methods described in those texts.  Only a

20  patent can provide exclusive rights to use a system or method (and that only for a period of 20

21  years from filing).  And after writing and teaching for many years that Bikram yoga is a

22  scientific method for obtaining better health, Mr. Choudhury is judicially estopped from now

23  claiming that the sequence is art.

24          Mr. Choudhury cannot be allowed to use copyright law to claim exclusive rights in a

25  exercise method, much less seize over two dozen of the basic ancient postures and breathing

26  exercises of Hatha Yoga from the public domain and secure them for his exclusive use.

27  Therefore, the Court should grant summary judgment for OSYU on claim I.

28

1

Dated: December 15, 2004                    Respectfully submitted,

2

3                                                          /s/
_____
Elizabeth H. Rader (SBN 184963)

4        SHAW PITTMAN LLP
1950 University Avenue

5        Suite 505
East Palo Alto, CA 94303

6        Telephone:  (650) 833-4700
Facsimile:   (650) 833-4701

7        JAMES P. HARRISON (SBN 194979)

8        Attorney at Law
980 9th Street, 16th Floor

9        Sacramento, CA 95814
Telephone: (916) 492-9778

10       *Attorneys for Plaintiff*

11       OPEN SOURCE YOGA UNITY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28